### HARRISON *v.* SPENCER.

MORTGAGES—TAX TITLE—ADVERSE POSSESSION.

A mortgagee of land who takes possession thereof under verbal authority from the mortgagor is entitled, as against a stranger, to set up adverse possession under a tax title under which the mortgagor claimed.

Error to St. Clair; Vance, J.   Submitted June 5, 1896. Decided July 21, 1896.

Ejectment by William Harrison against Horace H. Spencer.   From a judgment for defendant, plaintiff brings error.   Affirmed.

*Phillips & Jenks*, for appellant.

*Thomas M. Crocker* (*Atkinson & Wolcott*, of counsel), for appellee.

MONTGOMERY, J.   This was an action of ejectment to recover 80 acres of land in St. Clair county.   The plaintiff made a *prima facie* title from the government, and the defense depended upon proof of adverse possession.

The defendant introduced a tax deed to Ira Spencer, dated February 6, 1861, and recorded October 1, 1864, for the taxes of 1858, and a quitclaim deed from Ira Spencer to defendant, dated April 26, 1862, and recorded October 1, 1864.   The lands were then wild lands, but in 1865 defendant made an arrangement with Lorenzo D. Cole to go upon the lands, and get out timber; and he testifies that he went upon the land, made up several trees into oak staves, sold them, and got out some timber for defendant; that he moved into a shanty on the 40 acres adjoining the 80; that, while living on that 40, he worked on the 80, and built a house upon it in 1867,—a log house, with a shake roof; that he moved into this house in March, and left it in June, 1867.   Defendant then, January 3, 1868, sold the land by contract to one James Quinn, who never moved upon the land, but went to work and took off timber, to make staves and square timber, "and such like as that," and worked it for a portion of two years.   He paid $100 down on the contract, lived in a house about half a mile from the land, paid the road taxes and general taxes for two years, and testifies that no one interfered with his possession while he was working there.   November 21, 1871, defendant deeded the lands to Frederick Wilkes, who gave back a purchase-money mortgage.   Wilkes had his brother-in-law, one Frank Carpenter, move upon the land in the spring of 1872. Carpenter took out some oak, made staves, and sold it, under authority from Wilkes.   Wilkes himself moved upon the land in April, 1874, and stayed until March, 1875, and moved off the land.   During the time he was there, he was sued by one Hinchman, in justice's court, and there was testimony showing that Hinchman procured a levy to be made upon this land, and a sale was made, and a sheriff's certificate of sale given to Hinchman.   The pro-

ceedings were irregular, and not shown to have been sufficient to transfer the title of Wilkes. Defendant afterwards bought the Hinchman title. There is also testimony tending to show that in the spring of 1875, when Wilkes left the premises, he authorized the defendant, orally, to take possession. Very little was done towards taking possession until the spring of 1877, when defendant bought a piece of land adjoining, upon which his son lived, dug a well upon the premises, and cleared them, and raised crops, worked the sugar bush, and, from this time on, paid the taxes upon the land. The evidence fairly shows that the occupation was continuous, open, and hostile from that time on.

The plaintiff contends that prior to 1877 there was no continuous occupancy which amounted to adverse possession; that defendant's occupancy under the verbal license or permission from Wilkes cannot be tacked to his former possession; and that, if it can, such occupancy is not to be treated as possession under his tax title, and that, therefore, the adverse possession must have been continuous for 15 years in order to bar the plaintiff's right. The request preferred by the plaintiff at the close of the trial was that the court direct a verdict substantially upon the grounds stated. The circuit judge charged the jury that if Mr. Wilkes intended to transfer possession to Mr. Spencer, and Mr. Spencer so understood it, and, in pursuance of that talk, took possession of the property again, then his possession might be said to be continuous, and not broken by the fact that Wilkes had been in possession; but that if he did go into possession under that arrangement with Wilkes, and they so understood that it was for the purpose of transferring that possession, it would not carry with it the tax title which Mr. Spencer had deeded to Wilkes. On the other hand, the court charged that if Spencer went into possession after Wilkes left, because of the fact that he got a deed from Hinchman, then, as matter of law, there would be a break in the possession, which would defeat it; and that, whenever there

becomes a lapse or a break in possession where a person is seeking to establish a title by adverse possession, they must then commence their possession over again, because the possession must be continuous and unbroken all the time the statute requires it to run, before it can ever ripen into a title. The court further instructed the jury:

"If you determine from the evidence that there was a breach of the title [possession?] at the time Wilkes left this land in 1875, then there would not be sufficient time after that, and before the commencement of this suit, for Spencer to acquire adverse possession, because the tax title would be separate from the possessory title."

We should hesitate, upon the record, to say that there was proof of continuous possession prior to 1877; and, if it were necessary for the jury to find this, it would be doubtful whether the verdict could be sustained. But we think it is clear from the whole record that the jury must have found a continuous, adverse, hostile possession from the spring of 1877 until the commencement of this suit, a period of more than 10 years; and it is also clear that, in reaching a verdict in favor of defendant, the jury must have found that the possession by defendant was authorized by Wilkes. This being the case, we think the instruction upon one branch of the case was too favorable to plaintiff. Wilkes' title was the tax title. He was mortgagor to defendant. Whatever may be the right of the mortgagor after abandoning to the mortgagee the possession of the premises, it cannot be said that the mortgagee, who takes possession under the authority of the mortgagor, is not, as against a stranger, entitled to defend by the right of the title of the mortgagor. As against the mortgagor himself, the right of possession exists, under such circumstances, until demand for possession is made. *Reading* v. *Waterman*, 46 Mich. 107; *Morse* v. *Byam*, 55 Mich. 598; *Byers* v. *Byers*, 65 Mich. 598. There having been evidence of a continuous occupancy for a period of 10 years under this tax title, it fol-

lows that the plaintiff was not entitled to a directed verdict.

The judgment will be affirmed, with costs.

The other Justices concurred.